MASON v WAYNE COUNTY BOARD OF COMMISSIONERS

Docket No. 94911. Argued October 5, 1993 (Calendar No. 5). Decided
     August 31, 1994. Rehearing denied *post,* 1216.

Tajuana Mason, for herself and as next friend of Anthony Mason,
     a minor, brought an action in Wayne Circuit Court against the
     Wayne County Board of Commissioners and others, alleging
     negligence in failing to post school warning signs on the street
     where Anthony was seriously injured. The court, John H.
     Gillis, Jr., J., denied the defendant's motion, for summary
     disposition on the basis of governmental immunity and, follow-
     ing trial, entered judgment on a jury verdict for the plaintiffs.
     The Court of Appeals, SAWYER, P.J., and NEFF and FITZGERALD,
     JJ., affirmed in an unpublished opinion per curiam, reasoning
     that the duty to repair and maintain a highway includes the
     duty to post adequate traffic signage, including school signs,
     because they serve an integral part of the highway designed for
     vehicular travel (Docket No. 127003). The defendant appeals.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY,
     RILEY, and GRIFFIN, the Supreme Court *held:*

The trial court erred when it denied the defendant's motion
     to dismiss on the basis of governmental immunity.

The highway exception to governmental immunity extends
     only to the improved portion of the highway intended for
     vehicular travel. The provision specifically excepts the state
     and counties from liability for defects in sidewalks, crosswalks,
     or any other installation outside the improved portion of the
     highway designed for vehicular travel. This limitation defini-
     tively excludes from the highway exception specific installa-
     tions whose only rational purposes narrowly service the unique
     needs of pedestrians. It reflects a legislative conclusion that
     pedestrians and users of these installations have been suffi-
     ciently protected by their separation from motorists, without
     any need to impose a duty of maintenance and repair enforced
     by liability for resultant injuries. The defendants therefore
     cannot be liable under the highway exception for failing to
     install school warning signs because a school crossing is not a
     special danger to vehicles and passengers.

Chief Justice CAVANAGH, concurring in part and dissenting
     in part, stated that the trial court should have granted the

defendant's motion for summary disposition on the ground of governmental immunity because the highway exception specifically excepts the state and counties from liability for defects in crosswalks. This case can be decided exclusively on the basis of the highway exception's specific exclusion of crosswalks.

Reversed and remanded.

Justice LEVIN, joined by Justice MALLETT, dissenting, stated that Wayne County should be subject to liability for failure to post school warning signs.

The highway exception to the governmental tort liability act provides that a governmental agency is subject to liability for failure to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel. The obligation of the county is not only to repair signs that have been erected, but also to post signs necessary to keep the road in condition reasonably safe and fit for travel. The obligation extends not only to motorists and their passengers, but also to pedestrian travelers, and, indeed, to others injured as a result of the failure of a governmental agency to discharge its duty.

Although the fourth sentence of the highway exception provides that the county is not obliged to repair and maintain crosswalks or sidewalks, it does not follow that the fourth sentence relieves counties from liability for failure to keep the roadway in condition reasonably safe and fit for travel for all travelers, including pedestrians. The defect alleged by the plaintiff is not a defect in crosswalks, but rather a failure of the county to discharge its obligation to keep the roadway in condition reasonably safe and fit for travel by a child on the way to school.

Cities and townships are obliged under the first, second, and fourth sentences of the highway exception to provide signs and traffic signals reasonably necessary for pedestrian travel on city and township roads, sidewalks, and crosswalks, and also on sidewalks and crosswalks of state and county roads. But the state and the county have the obligation under the first and second sentences to provide signs and traffic signals respecting use of the highway reasonably necessary for the protection of motorists, their passengers, and other travelers, including pedestrians.

The majority errs in stating, as a matter of law, that a school does not present a special danger to vehicles, and that a school crossing is not a danger to vehicles and the vehicle passengers. School advance signs, school crossing signs, school speed limit signs, school pavement markings, overhead walkways, and flashing red stoplights are installed at schools for the protection

of motorists and their passengers, as well as for the protection of school children, to guard against the risk of collisions resulting from diversion of vehicles from the line of travel to avoid hitting a child.

*Bebout, Potere, Cox, Hughes & O'Mara, P.C.* (by *Francis P. Hughes*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *Mary Massaron Ross*), for the defendants.

Amici Curiae:

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Brenda E. Turner*, Assistant Attorney General, for Michigan Department of Transportation.

*Smith, Haughey, Rice & Roegge* (by *Craig R. Noland*) for County Road Association of Michigan.

BOYLE, J. The question presented is whether a governmental agency is immune from liability arising out of an accident involving a driver who drove through a red light near an elementary school and a ten-year-old student who had raced into the street. The student and his mother sued Wayne County on the theory that it was negligent because it failed to post school warning signs on that street. We hold that the trial court should have granted the defendant's motion for summary disposition on the ground of governmental immunity.

I

This case arises out of an accident that occurred on June 10, 1987, at the intersection of Outer Drive and Mendota in the City of Detroit. The plaintiff, Anthony Mason, who was engaged in a

race with a friend, ran out into the street and struck the side of a car that had just run the red light at the intersection. He sustained a closed head or traumatic brain injury.

Anthony Mason and his mother sued numerous defendants. Count v of the plaintiffs' sixth amended complaint alleged that the City of Detroit, Wayne County, and their employees breached their duties pursuant to MCL 691.1402; MSA 3.996(102) to maintain the streets and the intersection in reasonable repair. The complaint alleged that the defendants failed to install stop signs, a pedestrian overhead walkway, a flashing red stoplight, school advance signs, school crossing signs, school speed limit signs, and school pavement markings.

Before trial, the plaintiffs settled with the driver of the automobile. In addition, the court granted defendant City of Detroit's motion for summary disposition on the ground that the county had exclusive jurisdiction over the streets in question. Defendant Wayne County's motion for summary disposition on the basis of governmental immunity was denied.

The plaintiffs proceeded to trial against both Wayne County and the crossing guard who was stationed at the intersection. The jury found in favor of the crossing guard, but against Wayne County and awarded the plaintiffs two million dollars in damages.[1]

Both the plaintiffs and Wayne County appealed. The Court of Appeals resolved several issues, all in favor of the plaintiff. With respect to governmental immunity, the Court affirmed the trial court's ruling denying the county's motion for summary

---

[1] Much confusion surrounded the jury's verdict regarding the amount of damages. On appeal, the award was increased to four million dollars.

disposition. It reasoned that the duty to repair and maintain the highway "includes the duty to post adequate traffic signage, including school signs, because they serve an integral part of the highway designed for vehicular travel." Unpublished opinion per curiam, issued June 11, 1992 (Docket No. 127003), slip op, p 6.

The county appealed, and we granted leave to appeal. 442 Mich 924 (1993).[2]

II

By statute, governmental agencies are immune from tort liability while engaging in a governmental function, except activities that fall within one of the narrowly drawn exceptions. See MCL 691.1407; MSA 3.996(107); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984). This case involves the highway exception. See MCL 691.1402(1); MSA 3.996(102)(1).[3]

---

[2] The plaintiff did not cross appeal.

[3] The highway exception provides:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of Act. No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Michigan Compiled Laws. The duty of the state and county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. No action shall be brought against the state under this section except for

Defendant Wayne County argues that it cannot be liable under the highway exception for failing to install school warning signs because a school crossing is not a danger to vehicles and the vehicle passengers. We agree. The plaintiffs' action does not fall within the highway exception because a school does not present a special danger to vehicles. The highway exception abrogates governmental immunity except at "points of special danger to motorists . . . ." *Grof v Michigan,* 126 Mich App 427, 434; 337 NW2d 345 (1983); *Comerica Bank of Kalamazoo v Dep't of Transportation,* 168 Mich App 84, 86; 424 NW2d 2 (1987).[4] The plaintiffs' argument that prior decisions abrogate governmental immunity for all "traffic control devices," which include signs, reads those decisions far too expansively. The cases cited by the plaintiff involve signs warning vehicular traffic as opposed to pedestrians.

The highway exception specifically excepts the state and counties from liability for defects in crosswalks, the defect alleged by the plaintiff: "[t]he duty of the state and county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, *crosswalks,* or any other installation outside of the

---

injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state transportation department shall be payable only from restricted funds appropriated to the state transportation department or funds provided by its insurer.

[4] It is true that "[a]ny person" may recover, but only for injuries that result from vehicular accidents. If a defect in the improved portion of the highway causes a traffic accident, any person injured as a result of that accident may recover, including injured passengers or pedestrians, if any, and the owner of the vehicle.

improved portion . . . ."[5] That limiting sentence definitively excludes from the exception specific installations whose only rational purposes narrowly service the unique needs of pedestrians.[6] As

---

[5] The Motor Vehicle Code defines "Cross-walk" as

(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable highway.

(b) Any portion of a highway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface. [MCL 257.10; MSA 9.1810.]

This Court assumes that the Legislature intended to give terms in the governmental immunity act the same meaning as they have in the Motor Vehicle Code. See *Roy v Dep't of Transportation*, 428 Mich 330, 338-340; 408 NW2d 783 (1987). Other sources also define "Crosswalk" as "a lane, usually marked, for pedestrians crossing a street or highway." See *The Random House College Dictionary*. A crosswalk should not be confused with a "pedestrian overhead walkway." Cf. MCL 257.627a(3); MSA 9.2327(1)(3). Unless the word is to be read out of existence, governmental agencies do not owe a duty to pedestrians in crosswalks. Pedestrians crossing outside crosswalks face the additional hurdle of comparative negligence.

[6] It appears that the purpose of this limiting sentence, which applies only to counties and the state, is to allocate responsibility for sidewalks and crosswalks to local governments, including townships, cities, and villages. This had been the arangement before 1964 (when the statute at issue was enacted). Compare 1948 CL 224.21:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system.

with 1948 CL 242.1:

Any person or persons sustaining bodily injury . . . by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose

we explained in *Roy v Dep't of Transportation,* 428 Mich 330, 336; 408 NW2d 783 (1987), "the exclusion of sidewalks, crosswalks, and other installations from the duty of maintenance and repair, reflects a [legislative] conclusion that pedestrians and users of these installations have been sufficiently protected by the separation of them from motorists, without any need to impose a duty of maintenance and repair enforced by liability for resultant injuries." The fact that liability under the statute does not extend to those using the excluded installations may seem harsh. However, the phrase "designed for vehicular travel" can only be reasonably interpreted to mean "*intended* for vehicular travel." The explicit removal of exclusively pedestrian installations from the highway exception, coupled with the express language of the provision itself, permits but one conclusion: Pedestrians who trek upon Michigan highways must and do venture beyond the protective mandates of MCL 691.1402(1); MSA 3.996(102)(1).[7]

The exclusion of crosswalks from the highway exception is consistent with the idea underlying the highway exception—that drivers of vehicles should be able to keep their minds on the traffic, and should not have to worry that dangerous

corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair . . . .

[7] The State of Michigan pays for, and regulates the behavior of, school crossing guards. See MCL 257.613a to 257.613d; MSA 9.2313(1) to 9.2313(4). The highway exception does not place a tort duty on the government to protect other people who may need assistance. For example, the duty to protect toddlers from traffic lies with their caregivers. The duty to watch out for the visually impaired falls on drivers. The Penal Code requires them to take necessary precautions. See MCL 752.52(1); MSA 28.770(2)(1). "A driver of a vehicle shall not approach a crosswalk . . . or any other pedestrian crossing without taking all necessary precautions to avoid accident or injury to a blind pedestrian carrying a cane or using a dog guide." *Id.*

surprises lie ahead. Pedestrians are situated differently than vehicular traffic, which may approach obstacles in the highway too quickly to avoid them, or may avoid obstacles only by jeopardizing traffic in the adjoining lanes.

This legislative line drawing is also explicable on the ground that expanding the right to sue past a certain point does not prevent accidents, and amounts to nothing more than an expanded obligation to pay.[8] The Legislature may well have concluded that governmental liability for injuries to pedestrians crossing the street will not enhance vehicular safety.

### III

For the foregoing reasons, we reverse the decision of the Court of Appeals and hold that the trial court erred when it denied the defendant's motion to dismiss on the basis of governmental immunity. The case is remanded to the trial court with instructions to grant the defendant's motion for summary disposition on the ground of governmental immunity.

---

[8] Professor Priest has explained why expanding liability does not always increase safety:

> Some courts and agencies appear to believe that increasing the obligation of providers to compensate victims will always increase these providers' investments in safety. Where damage measures are compensatory, however, there is a very definite ceiling to the accident prevention investments that any provider will make. Providers will make investments to reduce the accident rate only to the extent that such investments are cost-effective—that is, that the marginal costs of preventive investments are less than the marginal gain in expected accident cost reduction. Beyond that point, it is less costly to pay damage claims or judgments than to prevent accidents from occurring. Thus, extending liability beyond that point will not affect the level of safety investments. [Priest, *The current insurance crisis and modern tort law,* 96 Yale L J 1521, 1537-1538 (1987).]

BRICKLEY, RILEY, and GRIFFIN, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I agree with the conclusion that the trial court should have granted the defendant's motion for summary disposition on the ground of governmental immunity because "[t]he highway exception specifically excepts the state and counties from liability for defects in crosswalks, the defect alleged by the plaintiff . . . ." *Ante,* p 135 (opinion of BOYLE, J.). I write separately to distance myself from the dicta contained in my sister's opinion: "The highway exception abrogates governmental immunity at 'points of special danger to motorists . . . .' " *Id.* (citations omitted). The instant case can be decided on the basis of the highway exception's specific exclusion of crosswalks.

LEVIN, J. (*dissenting*). The question presented is whether Wayne County is subject to liability for failure to post school warning signs. I would hold that it is.

The highway exception to the governmental tort liability act[1] provides that a governmental agency shall be subject to liability for failure to keep a

---

[1] Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed

highway under its jurisdiction "in reasonable repair, and in condition reasonably safe and fit for travel . . . ."

The majority states that the "highway exception abrogates governmental immunity at 'points of special danger to motorists . . . .' "[2] For reasons stated in my dissenting opinion in *Chaney v Dep't of Transportation,*[3] the county is obliged to post signs necessary to keep the road "in condition reasonably safe and fit for travel." *Joslyn v Detroit,* 74 Mich 458, 460; 42 NW 50 (1889); *McEvoy v Sault Ste Marie,* 136 Mich 172, 176; 98 NW 1006 (1904); *Kowalczyk v Bailey,* 379 Mich 568; 153 NW2d 660 (1967); *Tuttle v Dep't of State Hwys,* 397 Mich 44; 243 NW2d 244 (1976); *Salvati v Dep't of State Hwys,* 415 Mich 708; 330 NW2d 64 (1982); *Mullins v Wayne Co,* 16 Mich App 365; 168 NW2d 246 (1969).

The obligation to keep the road "in condition

---

for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel. No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer. [1964 PA 170, § 2, MCL 691.1402; MSA 3.996(102).]

The text of 1909 PA 283 is set forth in *Chaney v Dep't of Transportation,* 447 Mich 145, 202, n 55; 523 NW2d 762 (1994) (LEVIN, J., dissenting). 1948 CL 224.21 carries forward, without change, the operative language of the 1909 act:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel.

[2] *Ante,* p 135.

[3] *Chaney, supra,* pp 178 ff (LEVIN, J., dissenting).

reasonably safe and fit for travel" extends not only to motorists and their passengers, but also to pedestrian travelers, and, indeed, to others injured as a result of the failure of a governmental agency to discharge its duty to keep the road "in condition reasonably safe and fit for travel."

In *Mechay v Detroit,* 364 Mich 576, 578-579; 111 NW2d 820 (1961), this Court held that the City of Detroit was subject to liability, under a statutory provision containing language identical to that reenacted in the highway exception, to a worker injured when a streetlight pole broke, throwing him to the ground, and said:

> In *Rufner v City of Traverse City,* 296 Mich 204 [295 NW 620 (1941)], and *Cabana v City of Hart,* 327 Mich 287 [42 NW2d 97 (1950)] (19 ALR2d 333), we ruled that CL 1948, § 242.3 (Stat Ann 1958 Rev § 9.593), requires cities to maintain in reasonable repair electric street light poles as part of their duty to keep in reasonable repair streets, high-ways, sidewalks, et cetera, so that they shall be reasonably safe and convenient for public travel. The argument is made by defendant that whether or not street light poles are required to be main-tained in repair by that statute, the duty to do so does not extend to anyone except travelers and, since at the time of injury plaintiff was not travel-ing upon the adjoining street, defendant's statu-tory duty did not extend to him.
>
> We disagree. *The reference to public travel* [4] *contained in the statute quoted above is not a restriction upon the persons to whom the duty is owed but, rather, defines the standard by which the duty is measured:* "to keep in reasonable re-pair, so that they shall be reasonably safe and convenient for public travel."

*     *     *

---

[4] See n 1 for text 1948 CL 224.21, which contains language substan-tially the same as 1948 CL 242.3.

*Liability is imposed upon municipalities in favor
of "any person or persons" injured by reason of
the municipality's breach of its statutory duty. We
have not squarely held that the benefits of this
section of the statute are limited only to travelers,
nor do we see any ground upon which we should
do so now.* The opinion in *Beaudin v Bay City,* 136
Mich 333 [99 NW 285 (1904)] (4 Ann Cas 248, 16
Am Neg Rep 108), reasonably may be construed to
suggest that the statutory cause of action is lim-
ited only to travelers lawfully upon the street,
because it refers to cases outside Michigan which
had so construed somewhat similar statutes and
because the Court determined that the child plain-
tiff was entitled to recover so long as he was not
unlawfully using the street. To the extent that
there is any inference in that case inconsistent
with this opinion, it is expressly overruled. [Em-
phasis added.]

Although the fourth sentence of the highway
exception[5] provides that the county is not obliged
to repair and maintain crosswalks or sidewalks, it
does not follow that the fourth sentence relieves
counties from liability for failure to keep the
roadway "in condition reasonably safe and fit for
travel" for all travelers, including pedestrians.
"The defect alleged by the plaintiff" is not a
defect in crosswalks,[6] but rather a failure of the
county to discharge its obligation to keep the
roadway "in condition reasonably safe and fit for
travel" by a child on his way to school.

The fourth sentence imposes on cities and town-
ships the duty to keep crosswalks and sidewalks
"in condition reasonably safe and fit for travel."

---

[5] See n 1 for text.

[6] The majority states:

The highway exception specifically excepts the state and
counties from liability for defects in crosswalks, the defect
alleged by the plaintiff . . . . [*Ante,* p 135.]

The fourth sentence does not thereby relieve the state or the county of its obligation under the first and second sentences to keep the roadway "in condition reasonably safe and fit for travel."

Cities and townships are obliged under the first, second, and fourth sentences of the highway exception to provide signs and traffic signals reasonably necessary for pedestrian travel on city and township roads, sidewalks, and crosswalks, and also on sidewalks and crosswalks of state and county roads. But the state and the county have the obligation under the first and second sentences to provide signs and traffic signals respecting use of the highway reasonably necessary for the protection of motorists, their passengers, and other travelers, including pedestrians.

The majority errs in stating, as a matter of law, that "a school does not present a special danger to vehicles," and that "a school crossing is not a danger to vehicles and the vehicle passengers."[7] School advance signs, school crossing signs, school speed limit signs, school pavement markings, overhead walkways, and flashing red stoplights are installed at schools for the protection of motorists and their passengers, as well as for the protection of school children, to guard against the risk of collisions resulting from diversion of vehicles from the line of travel to avoid hitting a child.

Outer Drive at this school crossing is a busy thoroughfare. Outer Drive is a boulevard for approximately a mile preceding the east boundary of the school, and for approximately a mile preceding the west boundary of the school. But it is not a boulevard for the few blocks immediately east and immediately west of the school. The speed limit is thirty-five miles an hour, but actual speeds exceed

[7] *Ante,* p 135.

forty-five miles an hour. The need for special precautions is apparent. Minimally, the county could have stenciled across the roadway "SCHOOL" in each lane of travel—a precaution seen throughout the metropolitan area. Such a school advance warning would not be an "other installation outside of the improved portion of the highway designed for vehicular travel" under the fourth sentence.

As the Great Depression was about to descend on this nation, this Court observed that a highway authority "cannot confine its citizens in a traffic groove. It must take into account the natural inclination of children to run about in play and the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path. Such departure from the sidewalk is not negligence *per se* in the individual, nor does it relieve the city of the duty to keep its streets in proper condition for travel at the places where people may reasonably be expected probably to walk. *Lincoln v City of Detroit* [101 Mich 245; 59 NW 617 (1894)];[8] *Baker v City of Grand Rapids,* 111 Mich 447 [69 NW 740 (1897)]; *Finch v Village of Bangor,* 133 Mich 149 [94 NW 738 (1903)]. In all of these cases pedestrians were injured when off the side or crosswalks." *Jablonski v Bay City,* 248 Mich 306, 310; 226 NW 865 (1929).

The majority's disposition makes it unnecessary, in this dissenting opinion, to consider the other issues addressed in the briefs of counsel.

MALLETT, J., concurred with LEVIN, J.

---

[8] [I]t is not either extraordinary or negligent for pedestrians, in crossing the street, to cross at other points than the crosswalks, and to pass over such manholes, using due caution . . . . [I]t was a question for the jury whether the place in question was reasonably safe. [*Id.,* p 248.]